UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KENNETH ADCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:05-cv-44-WGH-SEB |
| | ) | |
| ERIC EBERHARD, Individually and as an | ) | |
| Officer of the Evansville Police Department; | ) | |
| UNKNOWN EPD OFFICERS, Individually and | ) | |
| as Officers of the Evansville Police Department; | ) | |
| EPD SUPERVISORS, Individually and as | ) | |
| Officers of the Evansville Police Department; | ) | |
| and THE CITY OF EVANSVILLE, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

### Introduction

This matter is before the Honorable William G. Hussmann, Jr., United States

Magistrate Judge, on Defendants' Motion for Summary Judgment filed June 14,

2006.[1]  (Docket Nos. 58-60).  Plaintiff filed his Response on September 18, 2006.

(Docket No. 73).  Defendants filed their Reply Brief on November 1, 2006.  (Docket

No. 76).

---

[1]The parties have consented to Magistrate Judge jurisdiction in this case.
(Docket Nos. 36, 39).  District Judge Sarah Evans Barker entered an Order of
Reference on February 16, 2006.  (Docket No. 40).

## **Background**

On March 7, 2003, at approximately 9:00 p.m., plaintiff arrived at "Bob's Lounge," 907 N. Fares Avenue, Evansville, Indiana. (Deposition of Kenneth Adcock ("Plaintiff's Dep.") at 12, 37). Plaintiff was armed with a handgun. (*Id.* at 43; Deposition of Angela Sue Robinson ("Robinson Dep.") at 17; Deposition of Kimberly Kay Cunningham ("Cunningham Dep.") at 17). Plaintiff normally drinks a shot of whiskey with a coke. (Plaintiff's Dep. at 10-11, 19; Cunningham Dep. at 14). Plaintiff admitted that he did drink on the night in question and concedes that he may have drunk enough for a police officer to smell the alcohol. (Plaintiff's Dep. at 51).

During the course of the night, plaintiff got into an argument with another patron of the bar. (Robinson Dep. at 34; Plaintiff's Dep. at 38-40). The other bar patron pulled a chair from under the plaintiff's feet. (Plaintiff's Dep. at 41). Plaintiff jumped up when this happened. (Plaintiff's Dep. 41). Plaintiff and the other patron wrestled or fought with each other. (Deposition of David Mayes ("Mayes Dep.") at 16-17, 19). Plaintiff and the other patron were then separated by others at the bar. (Plaintiff's Dep. at 41; Mayes Dep. at 9). The other patron was then removed from the bar. (Plaintiff's Dep. at 41). At this same time, another bar patron or employee called for the police. (Plaintiff's Dep. at 42; Robinson Dep. at 8, 10; Cunningham Dep. at 16). Before the police arrived, the patron who had been removed from the bar tried to re-enter the bar. (Plaintiff's Dep. at 42).

At 2:43 a.m., on March 8, 2003, Officer Brent Hoover ("Hoover") responded to the complaint of customer trouble at Bob's Lounge. When he arrived, an employee

of Bob's Lounge told him that the disturbance or trouble was resolved because the patron left.  Hoover reported this information to dispatch and left.  (Affidavit of Brent Hoover  ("Hoover Aff.") ¶ 5).

At some point, plaintiff gave his handgun to another bar patron, "Donna", in order to prevent it from being used if a fight occurred.  (Plaintiff's Dep. at 43).  However, another patron, David Mayes ("Mayes"), took plaintiff's handgun during the confusion of the argument.  (Plaintiff's Dep. at 46; Robinson Dep. at 14-15, 17-18).  Mayes took plaintiff's handgun and gave it to another female patron in order to hold it until the police arrived because he believed the plaintiff was angry and possibly intoxicated and should not have the gun while he was drunk.  (Mayes Dep. at 8-9, 21, 23-26, 31).  This caused a second argument with plaintiff where he confronted and shoved Mayes against a wall.  (Plaintiff's Dep. at 46).

At 3:05 a.m., on March 8, 2003, EPD Officers Eric Eberhard ("Eberhard"), Kyle Kassel ("Kassel"), Hoover, Dave Barron ("Barron"), and Greg Young ("Young") responded to a complaint of a person with a gun at Bob's Lounge.  (Affidavit of Kyle Kassel ("Kassel Aff.") ¶ 5; Hoover Aff. ¶ 6; Affidavit of Eric Eberhard ("Eberhard Aff.") ¶ 5; Affidavit of Dave Barron ("Barron Aff.") ¶ 5; Affidavit of Greg Young ("Young Aff.") ¶ 5).  Kassel and Eberhard entered the bar and told the bar employees to shut down the bar.  The officers ordered everyone out of the bar.  (Plaintiff's Dep. at 47; Eberhard Aff. ¶ 5).  A bar employee got Eberhard's attention and directed him to Mayes' table because he had been in an argument with plaintiff.  (Plaintiff's Dep. at 46; Eberhard Aff. ¶ 5).  As Eberhard approached Mayes' table, he saw the plaintiff's gun on the floor.  He secured the gun and spoke briefly to the people seated at

Mayes' table.  ("Plaintiff's Dep. at 47; Mayes Dep. at 26-27, 35; Kassel Aff. ¶ 5; Hoover Aff. ¶ 6; Eberhard Aff. ¶ 5).

Eberhard and Kassel went outside to speak to plaintiff.  Eberhard asked the plaintiff where he left his gun.  He said, "I put it on the bar in front of a blonde female."  Eberhard asked plaintiff if he knew where his gun was at that moment.  He said, "The blonde female still has it."  Eberhard then showed the gun to plaintiff and asked, "This gun?"  Plaintiff responded that it was his gun.  Eberhard told plaintiff that it was irresponsible and reckless to leave a gun unattended in a bar.  Eberhard argues that it was obvious that plaintiff did not know where his gun had been located or was located.  (Eberhard Aff. ¶ 5; Barron Aff. ¶ 5; Young Aff. ¶ 5).

Defendants claim that plaintiff then became angry and argued with Eberhard.  (Robinson Dep. at 22-23, 26-27; Mayes Dep. at 22-24, 28-29; Barron Aff. ¶ 5; Young Aff. ¶ 5).  Eberhard gave the plaintiff a chance to calm down, and the bartender, Angela Robinson ("Robinson"), told the police she would take plaintiff home.  (Robinson Dep. at 22, 27).  However, plaintiff continued to argue with the officers for several minutes.  (Robinson Dep. at 24, 27).  Plaintiff claims that he did not argue with the officers, but was chastised as being "dumb" for  "put[ting] a pistol in a bar."  (Plaintiff's Dep. at 47).  Plaintiff informed the officers that he was a Transportation Officer and showed them his gun permit.  Plaintiff claims that he continued to be denigrated by the officers and that he told them:  "Okay.  If I can't find out how you're – why you're harassing me, then come Monday morning I will go downtown and find out why."  (Plaintiff's Dep. at 48-50).  Defendants allege that plaintiff also threatened to sue the officers and also said he would file complaints against them.

(Kassel Aff. ¶ 6; Eberhard Aff. ¶ 7; Barron Aff. ¶ 6).  In response to this Eberhard said, "'Why wait till Monday morning?  You're under arrest right now.'"  (Plaintiff's Dep. at 50).

While Eberhard spoke to plaintiff, defendants claim that all of the officers noticed some or all of the following relevant characteristics regarding plaintiff:  (1) plaintiff had the smell or odor of an alcoholic beverage on his breath; (2) his eyes were watery, glassy and red; (3) his speech was slurred; (4) he appeared to be unsteady on his feet; (5) he was loud, argumentative and verbally abusive; (6) his judgment was impaired; and (7) he appeared intoxicated.  In addition, plaintiff had exercised extremely poor judgment in leaving his handgun unattended in a crowded bar.  (Kassel Aff. ¶ 5; Hoover Aff. ¶ 6; Eberhard Aff. ¶ 6; Barron Aff. ¶ 5; Young Aff. ¶ 5).  Linda Mae King ("King"), who was present at Bob's Lounge on the night in question, testified that plaintiff did not appear intoxicated, was not slurring his words, and was not stumbling, and that the officers "were being cruel" with plaintiff.  However, King admitted that she only briefly witnessed plaintiff's arrest because she went back inside Bob's Lounge to await a ride home.  (Deposition of Linda King ("King Dep.") at 35-38).

Based upon the officers' observations, they felt that there was probable cause to arrest the plaintiff for Public Intoxication, a Class B Misdemeanor, in violation of Indiana Code 7.1-5-1-3.  (Kassel Aff. ¶ 7; Hoover Aff. ¶ 7; Eberhard Aff. ¶ 8; Barron Aff. ¶ 7; Young Aff. ¶ 6).

At approximately 3:19 a.m., on March 8, 2003, Eberhard placed the plaintiff under arrest for Public Intoxication, handcuffed him, and placed him in the back of

his police cruiser for transport to the Vanderburgh County Jail.  (Kassel Aff. ¶ 8;
Hoover Aff. ¶ 8; Eberhard Aff. ¶ 9; Barron Aff. ¶ 8; Young Aff. ¶ 7; Plaintiff's Dep. at
47, 50-51; Robinson Dep. 21, 24, 30).  No force was used to place the plaintiff under
arrest.  (Plaintiff's Dep. at 50).  Eberhard acted in accordance with his training and
the EPD's Standard Operating Procedure ("SOP") for Arrests (SOP # 104.00).  (Kassel
Aff. ¶ 10; Hoover Aff. ¶ 10; Eberhard Aff. ¶ 11; Barron Aff. ¶ 10; Young Aff. ¶ 9).

Plaintiff was held for four and one-half (4.5) hours in custody as a result of his
arrest.  (Plaintiff's Dep. at 35).  Plaintiff's criminal charges were dismissed by a
special prosecutor.  (Plaintiff's Dep. at 68-69).

Plaintiff did not receive any physical injuries as a result of his arrest.
(Plaintiff's Answers to Defendants' Interrogatories, Interrogatory No. 4; Plaintiff's
Dep. at 26-27).  Plaintiff has not received any medical care as a result of his arrest.
(Plaintiff's Dep. at 34).

None of the officers present were supervisors, and none of the officers
present had final policymaking authority for the Evansville Police Department
("EPD") when plaintiff was arrested.  (Kassel Aff. ¶¶ 15-16; Hoover Aff. ¶¶ 14-15;
Eberhard Aff. ¶¶ 16-17; Barron Aff. ¶¶ 15-16; Young Aff. ¶¶ 14-15).  No EPD
supervisor had any involvement in plaintiff's arrest.  (Kassel Aff. ¶¶ 15, 17; Hoover
Aff. ¶¶ 14, 16; Eberhard Aff. ¶¶ 16, 18; Barron Aff. ¶¶ 15, 17; Young Aff. ¶¶ 14, 16).
Prior to arresting the plaintiff on March 8, 2003, the officers had no recollection of
ever meeting plaintiff before that time.  (Kassel Aff. ¶ 11; Eberhard Aff. ¶ 12; Barron
Aff. ¶ 11; Young Aff. ¶ 10).  Plaintiff is claiming that he was embarrassed and

suffered mental anguish as a result of his arrest.  (Plaintiff's Answers to Defendants' Interrogatories, Interrogatory No. 8; Plaintiff's Dep. at 26, 31).

Plaintiff filed suit alleging in his Second Amended Complaint that defendants' actions amounted to false arrest, imprisonment, malicious prosecution and unreasonable use of force.  (Second Amended Complaint ¶ 17).  Plaintiff also alleges that defendants' actions were done willfully and with actual malice and that exemplary damages are, therefore, warranted.  (Second Amended Complaint ¶¶ 20-21).  Plaintiff included a claim of unlawful custom policy or practice against the EPD and any supervisors of the arresting officers for making it a policy of the EPD to "cover up false arrests and imprisonments of citizens and the use of excessive force in making such arrests."  (Second Amended Complaint ¶ 24).  Finally plaintiff included claims for exemplary and compensatory damages under his false arrest and malicious prosecution claims and for intentional infliction of emotional distress, and he claims that the City of Evansville is liable under the theory of respondeat superior.  (Second Amended Complaint ¶¶ 28-48).

Defendants filed the pending Motion for Summary Judgment claiming that they are entitled to summary judgment because:  (1) plaintiff has failed to demonstrate that the officers lacked probable cause to arrest him which defeats his claims of false arrest, imprisonment and malicious prosecution; (2) plaintiff has failed to produce any evidence of excessive force; (3) plaintiff has failed to reveal any unlawful custom, policy or practice that led to his arrest; and (4) that the EPD and the City of Evansville are not liable under the Indiana Tort Claims Act.

The court concludes that, for the following reasons, defendants' Motion for Summary Judgment should be **GRANTED.**

## <u>Summary Judgment Standard</u>

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## <u>Analysis</u>

**1.      Plaintiff's Claims of False Arrest, Imprisonment and Malicious Prosecution**

Plaintiff filed suit alleging a violation of 42 U.S.C. § 1983.  "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan,* 957 F.2d 345, 349 n.1 (7th Cir. 1992).[2]  An officer has the probable cause necessary to make an arrest when "the facts and circumstances within [the officer's] knowledge and of which [the officer has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] has committed or was committing an offense." *Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).  Probable cause must be examined from the viewpoint of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. *Williams v. Kobel,* 789 F.2d 463, 471 (7th Cir. 1986).  The question of whether probable cause exists generally is a question of fact left to the jury, although when the material facts are not in dispute the court may decide. *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir. 1993).

In this case the question is:  Did the officers have probable cause to arrest plaintiff for Public Intoxication?  The offense of Public Intoxication is a Class B Misdemeanor.  IND. CODE 7.1-5-1-3.  The Indiana Court of Appeals has concluded

---

[2]A lack of probable cause is also a prerequisite for plaintiff's claim of malicious prosecution.  *See Conwell v. Beatty,* 667 N.E.2d 768, 778 (Ind. Ct. App. 1996).

that the smell of alcohol, red eyes, uncooperative behavior, slow and slurred speech, verbally abusive demeanor, and unsteadiness are all indicators of intoxication and would support a finding of probable cause for a Public Intoxication arrest. *Wright v. State,* 772 N.E.2d 449, 458 (Ind. Ct. App. 2002).

The uncontradicted evidence shows that, even in the light most favorable to plaintiff, the officers had been called to Bob's Lounge in response to reports of a fight. The officers were informed that plaintiff had been involved in an altercation, they found a gun lying on the floor inside Bob's Lounge, plaintiff admitted that he had placed the gun in the possession of someone named Donna, plaintiff admitted to drinking at least some alcohol, plaintiff smelled of alcohol, plaintiff had red glassy-looking eyes, plaintiff was verbally confrontational with the officers, and plaintiff was offered the opportunity to be taken home by an employee of Bob's Lounge and continued to question the police officers' actions to the point of threatening to file a complaint against them. While Ms. King testified that plaintiff was not slurring his speech, was not unsteady on his feet, and was not arguing with the police officers, she admitted that she had not seen the events immediately preceding plaintiff's arrest.[3] Additionally, her testimony about plaintiff's demeanor did not negate several of the facts that led to the officers' conclusions that there was probable cause to arrest plaintiff.

---

[3]Her deposition testimony states that she last saw plaintiff "about 10:30 p.m.," some four hours before the confrontation leading to plaintiff's arrest. (King Dep. at 30). She did testify that she got a good look at plaintiff at or near the time of the arrest for a brief moment. (*Id.* at 35).

It is also important to note that under § 35-47-2-23 of the Indiana Code it is a Class A Misdemeanor to possess a handgun without a license.  By placing his handgun in the possession of an individual named Donna, plaintiff was quite possibly facilitating the commission of a misdemeanor.  Thus, based on the facts as the officers knew them on the night in question, plaintiff had exercised extremely reckless judgment, if not illegal behavior.  He was at least somewhat combative toward the officers and did not show contrition for this reckless behavior, which is another factor that could lead a reasonable police officer to believe that he was exercising very poor judgment.  In light of the physical observations the officers made (plaintiff's glassy eyes, the smell of alcohol) and the mental observations the officers made (plaintiff's use of poor judgment with the gun and his behavior with the officers afterward), the court concludes that the facts that were known to the officers at the time of plaintiff's arrest would lead a reasonably prudent person to conclude that plaintiff had committed the offense of Public Intoxication.

**2.     Plaintiff's Excessive Force Claim**

Plaintiff has presented no evidence by way of affidavit or deposition testimony to suggest the use of excessive force.  Therefore, plaintiff's claim of excessive force must be **DISMISSED.**

**3.     Plaintiff's Remaining Claims:  Respondeat Superior, Failure to Train, Intentional Infliction of Emotional Distress, and Claims for Exemplary and Compensatory Damages**

Plaintiff's remaining claims all must fail because the court has determined that the officers had probable cause to arrest plaintiff for Public Intoxication.

## Conclusion

For the reasons outlined above, Defendants' Motion for Summary Judgment is

**GRANTED.**  Plaintiff's claims are **DISMISSED**.

**SO ORDERED.**

**Dated:**  January 26, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

John Andrew Goodridge
jgoodridge@jaglo.com

David L. Jones
BOWERS HARRISON LLP
dlj@bowersharrison.com

Robert W. Rock
BOWERS HARRISON LLP
rwr@bowersharrison.com